UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **LINDA RIZK**, et al.<br><br>               Plaintiffs,<br><br>      v.<br><br>**JULIE STUFFT**, *in her official capacity as Assistant Secretary of State, Bureau of Consular Affairs*,<br><br>               Defendant. | Case No. 1:24-cv-02630 (TNM) |

**MEMORANDUM OPINION**

"The sovereign may forbid the entrance of his territory either to foreigners in general, or in particular cases, or to certain persons, or for certain particular purposes, according as he may think it advantageous to the state." 2 Emer de Vattel, *The Law of Nations* § 94 (1748). The wisdom of Vattel lives on in the consular nonreviewability doctrine, which prevents meddling into the prerogative of the political branches to issue visas. Plaintiffs—one Canadian national, his business partner, and their companies—contest the applicability of the doctrine in their suit, which challenges the denial of the Canadian national's visa. But they have failed to show that either one of the circumscribed exceptions to the nonreviewability rule applies here. And even if they had showed as much, the consular officer provided a facially legitimate and bona fide reason for denying the visa. So the Court will not venture from its constitutionally prescribed duties to tend to those of another branch.

I.

Plaintiff Hugo Bernard is a Canadian golfer who has often traveled to the United States to play.[1]  Compl., ECF No.1, ¶ 29.  While on the course, he met Plaintiff Linda Rizk, who founded and operates Counter Forced Labor Technologies, LLC ("CFL-US"), and her husband Tom.  Compl. ¶¶ 23, 34.  CFL-US, itself a Plaintiff here, has a stated mission "[t]o empower corporations and businesses to mitigate forced labor in their supply chains by providing AI-powered, data driven technology products to manage all aspects of supply chain risk."  Compl. ¶ 22.

Bernard and Linda Rizk hatched a plan: They would work together to bring the technology empowering CFL-US to Canada, utilizing Bernard's extensive contacts at home to promote the enterprise.  Compl. ¶¶ 34–35.  Tom supplied the capital, loaning Bernard a quarter of a million dollars from his "personal funds."  Compl. ¶ 38.  And CFL-CANADA, also a Plaintiff, was born.  The company is incorporated in Delaware; it markets and sells CFL-US's technology to Canadian companies and law firms.  Compl. ¶¶ 10, 26.  Bernard is the CEO of CFL-CANADA.  Compl. ¶ 11.  He has "invested substantially into CFL-CANADA, including capital injections and equity contributions into the Company."  Compl. ¶ 36.

Bernard aimed to come to the States for a bit to get the company up and running.  *See* Nonimmigrant Visa App., ECF No. 1-6, at 11.  So he applied for a nonimmigrant treaty investor visa, or an "E-2" visa.  Compl. ¶¶ 40–49.  A foreign national seeking an E-2 visa must show that he intends to come to the United States "solely to develop and direct the operations of an enterprise in which the alien has invested, or of an enterprise in which the alien is actively in the

---

[1] These facts come from Plaintiffs' Complaint, which the Court treats as true for now.  *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 181 (2024).

process of investing, a substantial amount of capital." 8 U.S.C. § 1101(a)(15)(E)(ii). The foreign national also needs to be from a country that has a treaty in place with the United States permitting its citizens to obtain these visas. *Id.* § 1101(a)(15)(E). Because the requisite treaty is in place between Canada and the United States, *see* 9 U.S. Department of State Foreign Affairs Manual § 402.9–10, Bernard hoped to be designated a treaty investor in CFL-CANADA. Compl. ¶ 40.

Things went a different direction. First, the Government asked for supporting evidence, including "additional documentation showing how the original investment funds were committed"; "additional supporting documents showing that the business is real and operating"; and Bernard's resume. Compl. ¶ 41. Then, after an interview, Bernard "was advised that his application had been refused pursuant to [Immigration Nationality Act] § 221(g), which is issued when a consular officer has insufficient information to grant the visa." Compl. ¶ 44. Bernard was given a form regarding the refusal, with two boxes checked requesting that Bernard provide (1) "a copy of his complete resume (notwithstanding that it had already been provided)" and (2) "investment – receipts/invoices." Compl. ¶ 44; *see also* Notice of 221(g) Refusal, ECF No. 1-9, at 2.

Bernard again provided the requested the information. Compl. ¶ 45. Still, the next week Bernard received a notice indicating his visa had been denied under INA § 214(b). Compl. ¶ 46. The initial denial, sent by email, stated that the denial under Section 214(b) "means that you were not able to demonstrate that your intended activities in the United States would be consistent with the classification of the nonimmigrant visa for which you applied or that you failed to show that you met the requirements for the sought visa application." Initial Denial, ECF No. 1-11, at 2.

Plaintiffs—Bernard, Rizk, CFL-CANADA, and CFL-US—were displeased by this turn of events. They brought this suit, arguing that the Government[2] "denied Bernard's application for an E-2 visa on grounds that are arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law, because the grounds are contrary to the E-2 visa requirements." Compl. ¶ 62. They claimed that the consular officer "failed to provide a reasoned explanation or substantial evidence for its decision," leaving Bernard "to speculate with regard to real reasons why his application was denied." Compl. ¶ 64. Their action arises under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701, *et seq.*; Compl. at 18.

After this suit was filed, the Government issued a revised denial letter. Mot. Dismiss, ECF No. 9, at 2; Opp'n Br., ECF No. 12, at 7. The letter explained that Bernard did not "sufficiently demonstrate[] that the nationals of the treaty country are in a position to 'develop and direct' the enterprise" and that the consular officer "was not satisfied that the loan arrangement was a bona fide arm's length business transaction such that [Bernard] [was] personally indebted and putting personal funds at risk." Refusal, ECF No. 12-2, at 2.

Now, the Government moves to dismiss under Federal Rule of Civil Procedure 12(b)(6). Mot. Dismiss. It mainly argues that Plaintiffs' claims are barred by the consular nonreviewability doctrine. *Id.* at 3–11. With Plaintiffs' opposition in hand, Opp'n Br., ECF No. 12, the motion is ripe for review.

---

[2] Technically, Plaintiffs sue Julie Stufft, the Assistant Secretary of State, Bureau of Consular Affairs, in her official capacity. Compl. ¶ 12. The Court refers to Stufft as "the Government" for ease.

II.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). The court must "accept all the well-pleaded factual allegations of the complaint as true and draw all reasonable inferences from those allegations in the plaintiff's favor." *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017). Certain immunity doctrines, including the consular nonreviewability doctrine, go towards a plaintiff's failure to state a claim under Rule 12(b)(6). *See Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1027 (D.C. Cir. 2021) ("Dismissal based on consular nonreviewability . . . is a merits disposition . . . .").

III.

Plaintiffs' challenge to the visa determination is barred by the consular nonreviewability doctrine, as they have failed to show that any exception to that rule applies. More, even if an exception *did* apply, the consular officer "gave a 'facially legitimate and bona fide reason' for denying the visa." *Dep't of State v. Munoz*, 602 U.S. 899, 908 (2024) (quoting *Kerry v. Din*, 576 U.S. 86, 103–04 (2015) (Kennedy, J., concurring in the judgment)). The consular officer adequately explained the justifications for the denial, and Plaintiffs did not provide "clear evidence" of bad faith. *Colindres v. United States Dep't of State*, 71 F.4th 1018, 1024 (D.C. Cir. 2023) (quoting *United States v. Chem. Found., Inc.*, 272 U.S. 14–15 (1926)). Thus even if review were warranted, Plaintiffs would fail to state a claim for which relief could be granted.

A.

"The exclusion of aliens is a fundamental act of sovereignty," entrusted to the popularly elected branches. *Trump v. Hawaii*, 585 U.S. 667, 682 (2018) (cleaned up). Choices "to exclude

a given alien" are thus "largely immune from judicial inquiry or interference" because they are "intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations, the war power, and the maintenance of a republican form of government." *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950); *Harisiades v. Shaughnessy*, 342 U.S. 580, 588–89 (1952). Considering these principles, "and . . . the lack of any statute expressly authorizing judicial review of consular officers' actions," courts have heeded closely to "the doctrine of consular nonreviewability." *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1159 (D.C. Cir. 1999). This rule immunizes consular officers' decisions to issue or withhold a visa from judicial review, unless Congress says otherwise. *Id.*

Still, the doctrine of consular nonreviewability is not absolute. There are two narrow circumstances in which a court can evaluate a visa denial. First, when "a statute expressly authorizes judicial review." *Baan Rao Thai Rest.*, 985 F.3d at 1024–25 (cleaned up). This exception is not at issue here. Plaintiffs bring their claims under the APA, but they do not argue that the APA permits evasion of consular nonreviewability. Nor could they; the D.C. Circuit has firmly held that the APA provides no grounds for challenging consular choices. *See Saavedra Bruno*, 197 F.3d at 1158; *see also Yaghoubnezhad v. Stufft,* 734 F. Supp. 3d 87, 104 (D.D.C. 2024).

No, the klieg lights here shine on the second exception. It permits judicial review "when the denial of a visa allegedly burdens the constitutional rights of a U.S. citizen." *Munoz*, 602 U.S. at 908. If a plaintiff shows as much, a court conducts a limited assessment of the consular decision, "consider[ing] whether the Executive gave a facially legitimate and bona fide reason for denying the visa." *Id.* (cleaned up). Plaintiffs argue that the denial of Bernard's visa

deprived them of their due process rights under the Fifth Amendment to the U.S. Constitution, rendering the decision reviewable.³  Compl. ¶ 53.

Plaintiffs are wrong.  Start with Bernard himself.  As an alien outside of domestic territory, he has no rights under the U.S. Constitution to challenge his visa denial, because he has no right to come into the country in the first place.  This much is clear.  *Munoz*, 602 U.S. at 908 ("[The visa applicant] cannot invoke the [constitutional] exception himself, because he has no 'constitutional right of entry to this country as a nonimmigrant or otherwise.'  Thus, so far as [he] is concerned, the doctrine of consular nonreviewability applies.") (quoting *Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972)).  So right off the bat, Bernard's claims must be dismissed.

Undeterred, Plaintiffs argue that Bernard's visa proceedings violated the constitutional rights of the U.S.-based parties—most pointedly, the due process rights of CFL-CANADA.  Opp'n Br. at 12.  These assertions also founder.

The Fifth Amendment's Due Process Clause prohibits the government from "depriv[ing]" anyone from their "life, liberty, or property, without due process of law."  U.S. Const. amend. V.  This provision "affords both substantive and procedural protections."  *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1265 (D.C. Cir. 2020).  "A procedural due process violation under the Fifth Amendment occurs when a government official deprives a person of [life, liberty, or] property without appropriate procedural protections—protections that include, at minimum, the basic requirements of notice and an opportunity to be heard."  *Id.*  At the same time, "[t]he Due Process Clause guarantees more than fair process"; it "also provides heightened protection

---

³ Technically, the Plaintiffs argue their rights under the Fourteenth Amendment were violated.  Compl. ¶ 53.  But the Fourteenth Amendment only applies to the states; the Fifth Amendment contains the due process guarantee against the federal government.  So the Court proceeds as if Plaintiffs had properly alleged a violation of their Fifth Amendment rights.  *See* Fed. R. Civ. Pro. 60(a) ("The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in . . . the record . . . on motion or on its own, with or without notice.").

against government interference with certain fundamental rights and liberty interests." *Washington v. Glucksberg*, 521 U.S. 702, 719 (1997). In other words, substantive due process bars government deprivation of certain fundamental rights "regardless of the fairness of the procedures used." *Daniels v. Williams*, 474 U.S. 327, 331 (1986). For both faces of the Clause, though, the initial inquiry is the same: whether a plaintiff has asserted a protected interest in her life, liberty, or property.[4] *Wonders v. Dep't of the Army Off. of Gen. Couns.*, 749 F. Supp. 3d 122, 134 (D.D.C. 2024), *aff'd sub nom.*, 2025 WL 717386 (D.C. Cir. Feb. 28, 2025).

It is unclear whether Plaintiffs bring a procedural or substantive due process challenge on behalf of CFL-CANADA. They seem to gesture towards both. Either way, they fail to identify the deprivation of a protected right.

To start, any assertion of procedural due process is foreclosed by *Munoz*. There, the Supreme Court held that a citizen does not possess procedural due process rights in someone else's visa proceedings. *Munoz*, 602 U.S. at 917–18. The E-2 adjudication was for Bernard's visa. *See* Nonimmigrant Visa Application at 3, 9. CFL-CANADA thus has no procedural due process rights to claim.

The company tries to work around *Munoz*. It insists that CFL-CANADA *was* a "party to the visa application" because a "decision on an E-2 visa involves an adjudication by the consulate of both the eligibility of the individual visa applicant and the company in which they will be investing." Opp'n Br. at 12. It points out that the E-2 visa requirements require the

---

[4] Note, though, that certain rights are protected under the procedural due process clause that are not protected by the substantive due process clause, and vice versa; critics of the due process framework have pointed to this dissonance as evidence of the unworkability of the doctrine. *See Kerry v. Din*, 576 U.S. 86, 92 (2015) (plurality op.) (Scalia, J.) ("[T]his Court has seen fit on several occasions to expand the meaning of 'liberty' under the Due Process Clause to include certain implied 'fundamental rights.' . . . These implied rights have been given *more* protection than 'life, liberty, or property' properly understood. While one may be dispossessed of property, thrown in jail, or even executed so long as proper procedures are followed, the enjoyment of implied constitutional rights cannot be limited at all, except by provisions that are narrowly tailored to serve a compelling government interest.") (cleaned up).

applicant to show that he is investing in a "bona fide enterprise," meaning that the "enterprise [is] a real and active commercial or entrepreneurial undertaking, producing some service or commodity for profit and [meeting] applicable legal requirements for doing business in the particular jurisdiction in the United States."  Opp'n Br. at 13 (citing 22 C.F.R. § 41.51(b)(8)).  More, the business cannot be a "marginal enterprise" that "does not have the present or future capacity to generate more than enough income to provide a minimal living for the treaty investor."  22 C.F.R. § 41.51(b)(10).  In light of these regulations, CFL-CANADA argues that it "has changed its economic position in order to qualify for the visa," "already spen[ding] over $100,000."  Opp'n Br. at 13.

Plaintiffs cite no case law to support their argument that the investment *targets* of treaty investor visa adjudications are *themselves* parties to those adjudications.  Common sense helps explain why there is probably nothing for them to point to.  Just because an entity is implicated by and relevant to an adjudication does not make that entity a party to the adjudication.  For instance, welfare benefit calculations often consider the incomes of an applicant's spouse, even where that spouse is not entitled to welfare himself or herself.  *See* 20 C.F.R. § 416.1161(a); 42 C.F.R. § 435.603(e).  The same is true here—the consular officer may have had to consider the economic viability of CFL-CANADA when determining Bernard's visa application, but that does not mean CFL-CANADA was a participant in it.  *Accord Spencer Enters., Inc. v. United States*, 229 F. Supp. 2d 1025, 1043 (E.D. Cal. 2001), *aff'd*, 345 F.3d 683 (9th Cir. 2003) (holding a domestic company having a visa-contingent contract with an investor whose visa application was denied "ha[d] no standing to raise a procedural due process claim" because it "had no matter

9

pending before the INS"). Put quite simply: Why would a domestic corporation be applying for a visa? CFL-CANADA has no procedural due process rights here.

Nor was it deprived of a substantive due process right.[5] The substantive face of the Due Process Clause safeguards "certain fundamental rights and liberty interests." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). The inquiry proceeds in two steps. First, the litigant must put forth a "careful description of the asserted fundamental . . . interest." *Munoz*, 602 U.S. at 910 (quoting *Glucksberg*, 521 U.S. at 721). And second, the litigant needs to show that the asserted right is "objectively, deeply rooted in this Nation's history and tradition." *Id.* (quoting *Glucksberg*, 521 U.S. at 721).

Step one. The clearest articulation of the right that CFL-CANADA is asserting comes from the Plaintiffs' opposition brief. Plaintiffs contend that CFL-CANADA "has a property interest in its certification and registration by the [Government] and in the admission of its sole investor." Opp'n Br. at 14.

A fair enough description. But Plaintiffs wholly fail to show that this interest is "so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Snyder v. Massachusetts*, 291 U.S. 97, 105 (1934). They cite no historical laws or precedent showing that Americans have always considered the right to import a CEO and investor of one's choosing as

---

[5] It is doubtful whether a litigant can latch onto substantive due process to circumvent consular nonreviewability after *Munoz*. In *Munoz*, the plaintiff—spouse of a visa applicant—disclaimed a substantive due process right to have her husband enter the United States. *Munoz*, 602 U.S. at 910–11. The Court described such a disclaimer as "wise," as "such a claim would ordinarily trigger strict scrutiny—and it would be remarkable to put the Government to the most demanding test in constitutional law in the field of immigration, an area unsuited to rigorous judicial oversight." *Id.* at 911. Instead, she asserted a "marital right . . . sufficiently important that it cannot be unduly burdened without procedural due process." The *Munoz* Court looked askance at this legal contortionism. This implied the right was "fundamental enough to be implicit in 'liberty'; but, unlike other implied fundamental rights, its deprivation does not trigger strict scrutiny." *Id.* Such a Frankenstein right "would be in a category of one: a substantive due process right that only gets procedural due process protection." *Id.* While such a classification was doubtful to the Court, it held that it "need not decide whether such a category . . . exists," as the litigant failed to establish that the asserted right was "deeply rooted in this Nation's history and tradition," anyway. *Id.*

immutable.  *Cf. Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 241–50 (2022) (evaluating a plethora of common law and Founding-era sources to determine whether a right to abortion is deeply rooted in history and tradition).  Nor have they demonstrated that businesses have always enjoyed the right to be certified as treaty investor enterprises—which, of course, is just another way to say that the treaty investor himself was approved for a visa.

CFL-CANADA may feel strongly about Bernard being admitted.  But that does not mean it has an age-old entitlement to his visa.  *Accord Spencer Enters., Inc.*, 229 F. Supp. 2d at 1043 (holding domestic corporation "ha[d] no constitutionally protected 'property interest' to have an alien admitted into the United States for business purposes").  Indeed, it would be odd for an alien to lack due process protections over *his own* proceedings, but for a nonparty business to claim such rights.  *See Legal Assistance for Vietnamese Asylum Seekers v. Dep't of State, Bureau of Consular Affs.*, 104 F.3d 1349, 1354 (D.C. Cir. 1997) (stating that "migrants, as aliens, may not assert a Fifth Amendment right in challenging the procedures for granting immigrant visas" and that "the substantive rights of the citizen-sponsor to a particular process cannot be greater than the right of the applicant himself").  It would also be odd for a citizen to lack substantive due process rights in her *spouse*'s proceedings, as found in *Munoz*, but for a company to possess rights to its CEO's proceedings.  *See Munoz*, 602 U.S. at 903.

CFL-CANADA does not have any fundamental right at stake here.  And because the other Plaintiffs never clearly articulate what substantive due process violation they stand to

11

suffer, *see* Compl. ¶ 53, none of the Plaintiffs' claims survive the consular nonreviewability doctrine.

### B.

Even if a Plaintiff *had* suffered a constitutional violation, the Court would uphold the visa determination. The standard of review in such cases is "deferential." *Colindres v. United States Dep't of State*, 71 F.4th 1018, 1024 (D.C. Cir. 2023). The Court need only ask whether the consular officer "gave a facially legitimate and bona fide reason for denying the visa." *Munoz*, 602 U.S. at 908 (cleaned up). This requirement is "easy to satisfy." *Colindres*, 71 F.4th at 1024. "Citing a statutory provision that specifies discrete factual predicates the consular officer must find to exist before denying a visa is enough." *Id.* (cleaned up). More, "even if the government fails to cite such a statute, it may still meet its burden by disclosing the facts motivating its decision." *Id.* (cleaned up).

The Government satisfied that standard here. In denying Bernard's visa application, the consular officer cited Section 214(b) of the INA. Refusal at 2. That provision states that "[e]very alien . . . shall be presumed to be an immigrant until he establishes to the satisfaction of the consular officer, at the time of application for a visa . . . that he is entitled to a nonimmigrant status." 8 U.S.C. § 1184(b). In citing this predicate, the officer set forth explicit factual findings undergirding the denial, explaining Bernard did "not sufficiently demonstrate[] that nationals of the treaty country are in a position to 'develop and direct' the enterprise." Refusal at 2. More, "[t]he consular officer found that [Bernard]'s investment consisted of a loan from [his] U.S. business partner," and thus the officer "was not satisfied that the loan arrangement was a bona fide arm's length business transaction such that [he] [was] personally indebted and putting personal funds at risk." *Id.* These explanations easily fulfilled the Government's requirement to

12

proffer a facially legitimate and bona fide reason for denying Bernard's visa. *See Yafai v. Pompeo*, 912 F.3d 1018, 1021 (7th Cir. 2019) (Barrett, J.) ("[N]o more was required" to satisfy the facially legitimate and bona fide standard where the officer "cited a valid statutory basis" and provided a brief "factual predicate for his decision.").

Plaintiffs insist that the Government acted "in bad faith," thereby undermining its justifications for denying the visa. Opp'n Br. at 14–15. To be sure, "an 'affirmative showing of bad faith on the part of the consular officer' can demonstrate the government failed to give a 'bona fide' reason for its actions." *Colindres*, 71 F.4th at 1025 (quoting *Din*, 576 U.S. at 105–06). "But because courts 'presume' that 'public officers' have 'properly discharged their official duties,' a litigant must provide 'clear evidence' of bad faith." *Id.* (quoting *United States v. Chem. Found., Inc.*, 272 U.S. 1, 14–15 (1926)).

Plaintiffs have not shown that the consular officer had "improper bias, dishonest belief, or illicit motive." *Pak v. Biden*, 91 F.4th 896, 902 (7th Cir. 2024) (cleaned up). They point out that, throughout the adjudication, the Government "indicated that Plaintiff Bernard had not provided sufficient information in [his] application and requested a copy of [his] resume." Opp'n Br. at 15. But the resume "was part of Plaintiff Bernard's original application," so "[t]here is no explanation as to how the [Government] simply missed the resume." *Id.* But this allegation is neither here nor there. The ultimate denial of the application had nothing to do with the misplaced resume. Bernard may raise "alarming concern" as to whether the consular officer "ever review[ed]" the resume, given the ultimate denial found that Bernard "had not sufficiently demonstrated" that he could "develop and direct" the company. Opp'n Br. at 9. But this is just rank speculation; it does not amount to a clear showing of deliberate duplicity. And perhaps the

13

consular officer reviewed the resume and *then* came to his conclusion about Bernard's incapacity to conduct the enterprise.

Plaintiffs also insist that the Government "bases it[s] rejection of Plaintiff Bernard's application in part on the alleged fact that Plaintiff Bernard was not personally liable for [his] loan, which is clearly not true based upon the terms of the loan agreement that was provided to [the Government]." *Id.* at 15.  And Plaintiffs argue that the Government "alleges that the lender to Plaintiff Bernard is a business partner of the lender, yet there is absolutely no evidence to that effect and [it] is clearly not true." *Id.*  But none of these qualms with the consular officer's ultimate findings establish bad faith.  "[T]he fact that the officer did not believe [Bernard's] evidence does not mean that the officer was dishonest or had an illicit motive." *Yafai*, 912 F.3d at 1022.  Nor does an allegation that the decision was "based on a factual error." *Thomas v. Pompeo*, 438 F. Supp. 3d 35, 41 (D.D.C. 2020).

Overall, Bernard's bad-faith argument centers on the consular officer's alleged lack of expertise and attention to his evidence.  Opp'n Br. at 10.  But normally, courts may not "look behind the exercise of [executive] discretion" to deny a visa by examining the weight of the evidence behind that choice.  *Kleindienst v. Mandel*, 408 U.S. 753, 770 (1972).  So a showing of bad faith requires something more than just challenging the sufficiency of the evidence.  *See Saleh v. Tillerson*, 293 F. Supp. 3d 419, 429 (S.D.N.Y. 2018) ("[T]he lack of record evidence [undergirding the visa denial] cannot, by itself, support a claim of bad faith.").  A plaintiff must show some independent, objectively *bad* behavior—harassment, retaliation, discrimination, or flagrant internal inconsistencies so to raise an inference of malicious intent.  Indeed, "[m]aking an 'affirmative showing of bad faith' requires a plaintiff to point to something more than an unfavorable decision." *Yafai*, 912 F.3d at 1022; *cf. Khachatryan v. Blinken*, 4 F.4th 841, 855

14

(9th Cir. 2021) (holding plaintiff met his burden to show bad faith where he traced a "pattern of troubling behavior" by the consulate "over . . . an extended period of time," including relying on justifications another agency had expressly repudiated; inexplicably reversing its position on previous factual findings; and "discover[ing]," after 14 years, another basis for denial).

And "[w]hile it is not necessary for the [Government] to rebut [Plaintiffs'] allegation of bad faith," the Court notes that the evidence "reflects a good-faith evaluation" of Bernard's application. *Yafai*, 912 F.3d at 1022. "The officer asked [Bernard] to submit additional documents so that the consulate could reconsider h[is] visa application." *Id*. This "request for additional documents is inconsistent with the [P]laintiffs' allegation that the officer ignored evidence in bad faith; on the contrary, the officer's willingness to reconsider [Bernard's] application in light of additional evidence suggests a desire to get it right." *Id*. In short, Plaintiffs have not "plausibly alleged" bad faith "with sufficient particularity." *Din*, 576 U.S. at 105. (Kennedy, J., concurring).

## IV.

As Vattel harped centuries ago, admitting aliens is fundamental to sovereignty. In this country, that prerogative has been largely consigned to the political branches. The Court declines to disturb this principle. So the Government's motion to dismiss will be granted. A consistent order is forthcoming.

Dated: July 1, 2025                                                           TREVOR N. McFADDEN, U.S.D.J.

15